UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21037-CIV-MCALILEY
(CONSENT CASE)

ANTHONY GHAFFARI,

Plaintiff,

v.

COLLINS TOWER ASSOCIATION, et al.,

Defendants.
_______________________________________/

**DEFAULT JUDGMENT ON LIABILITY AGAINST DEFENDANT DAVID ABRAMS**

This cause is before the Court *sua sponte*. On numerous occasions during this lawsuit, Defendant David Abrams Esq., who also served as counsel for all Defendants, willfully and in bad faith spurned orders of this Court and violated corresponding Local Rules and Federal Rules of Civil Procedure. Abrams' behavior continued even after warnings and instruction by the Court, and the imposition of lesser sanctions. Left with no other option, pursuant to Rule 16(f) and 37(b)(2)(A)(vi), and this Court's inherent authority, the Court enters a default judgment on liability against Abrams and in favor of Plaintiff.

## I. Procedural Background

On March 22, 2013, Plaintiff Anthony Ghaffari filed a Complaint against the Collins Tower Association, four individual board members of the Association, and David Abrams,

an attorney who represented the Association.  Ghaffari alleged that the Defendants had engaged in false, misleading, unfair, and deceptive debt collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. [DE 1].  The case was initially assigned to the Honorable Jose E. Martinez [DE 2], who referred it to me for pretrial proceedings [DE 7].  On July 22, 2013, the case was referred to me in full upon the consent of the parties.  [DE 21].

Plaintiff Ghaffari represents himself in this action.  Defendant Abrams, who is an attorney, also represents himself in this matter.  At the outset of the lawsuit, Abrams also appeared as counsel for all Defendants.  [DE 9].  Abrams continued to represent all Defendants until February 20, 2014, when Ramy P. Elmasri, Esq., filed a notice of appearance on behalf of all Defendants, with the exception of Abrams.  [DE 57].

On multiple occasions over the course of this lawsuit, while acting on behalf of all Defendants, Abrams did not comply with applicable rules and disobeyed court orders.  For this reason, at the pretrial conference held on February 19, 2014, I concluded that a default judgment on liability should be entered against all Defendants and I made findings in support of that conclusion.[1]  I did not immediately reduce that order to writing however, as I allowed the parties an opportunity to first try to resolve the matter at mediation.  [DE 56].

A partial agreement was reached at mediation:  Ghaffari and the Collins Tower Association and its individual board members settled, and the claims against those

---

[1] A transcript of the pretrial conference has been filed at docket entry 71.

Defendants thereafter were dismissed. [DE 76, 79]. Ghaffari and Abrams, however, could not reach agreement. [DE 76]. Thus, consistent with my findings at the February 19, 2014 pretrial conference the Court now enters a default judgment on liability against Abrams.

## II.   Legal Standard

A federal court has the inherent authority to dismiss an action or to strike a pleading in order to enforce its own orders and to ensure the prompt disposition of legal actions. *State Exchange Bank v. R.F. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). In addition to the control necessarily vested in the court to manage its own docket, this court may "wield its inherent powers over the lawyers who practice before it" and supervise their professional conduct. *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1244 (11th Cir. 2009). This power derives from a lawyer's role as an officer of the court, who, like the court itself, is responsible for advancing the ends of justice. *Id.* at 1244 (citing *Theard v. United States*, 354 U.S. 278 (1957)).

In addition to the Court's inherent authority, the Federal Rules of Civil Procedure grant broad discretion to district courts to enforce the parties' discovery obligations and court orders by imposing appropriate sanctions. In particular, Rule 37 authorizes the Court to enter a default judgment against a disobedient party who fails to obey an order to provide discovery. Fed. R. Civ. Pro. 37(b)(2)(A)(vi). Rule 16 authorizes the issuance of any just order, including the sanction of a default judgment, against a party who fails to obey a

pretrial order or who is substantially unprepared to participate, or who does not participate in good faith, in the pretrial conference. Fed. R. Civ. Pro. 16(f)(1).

The Court's authority to impose sanctions must, however, be "exercised with restraint and discretion." *Sahyers*, 560 F.3d at 1244 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). The severe sanction of a default judgment is appropriate only as a last resort, and requires a finding that a party acted willfully or in bad faith, rather than out of negligence or misunderstanding. *Malautea v. Suzuki Motor Co Ltd.,* 987 F.2d 1536, 1542 (11th Cir. 1993). Additionally, before entering a default judgment, the court must afford the offending party the basic due process of notice and an opportunity to be heard. *Id.* at. 1542-43.

## III. Findings of Fact and Conclusions of Law

With these legal standards in mind, I make the following findings of fact and conclusions of law that support entry of a default judgment as a sanction against Abrams. These factual findings are based upon the written record and the statements of the parties at the December 18, 2013 discovery hearing[2] and the February 19, 2014 pretrial conference.

### A. Abrams Has Repeatedly Violated Court Orders and Governing Rules

#### 1. Pretrial and Trial Order

Courts must enter orders and administer the Federal Rules of Civil Procedure in order "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Pro. 1. Pursuant to Rule 16(b)(1), on July 29, 2013, I entered a Pretrial and Trial

---

[2] A transcript of that discovery hearing has been filed at docket entry 81.

Order that set the trial date and pretrial deadlines for this case. [DE 23]. This included an October 31, 2013 deadline for conducting discovery and a January 15, 2014 deadline to file the Joint Pretrial Stipulation.[3]  *Id.*  As discussed below, Abrams did not comply with either of these deadlines. The Order cautioned the parties that:

> Non-compliance with any provision of this Order, the Federal Rules of Civil Procedure, and/or the Local Rules of Court, may subject the offending party to **sanctions, which may include dismissal of claims, or entry of default judgment, and the imposition of attorney's fees and costs.**

*Id.* The Order was electronically served upon Abrams in accordance with the Court's Case Management Electronic Case Filing Procedures ("CM/ECF").

### 2.    Ghaffari's Motion to Compel; First Show Cause Order

On November 18, 2013, about two weeks after the deadline for completing discovery, Ghaffari filed a motion to compel discovery. [DE 32]. The motion alleged that Defendants (who were all represented by Abrams at that time) had made no response to the discovery Ghaffari had served on them. *Id.* Specifically, on August 5, 2013, well within the discovery period, Ghaffari served a subpoena duces tecum on Defendant Lazo[4] demanding the financial records of the Collins Tower Association for 2012. [*Id.* p. 2, 7]. On the same date, Ghaffari also served interrogatories on each Defendant. [*Id.*, p. 2, 8-11]. The motion alleged that the

---

[3] The latter deadline was later extended to February 7, 2014. [DE 41].

[4] As I later explained to Ghaffari [*see* DE 37, n.1], he improperly issued a subpoena, rather than a document request, to ask for documents from Lazo, who was a party to the action. I found that Lazo, by failing to object to the subpoenas and by failing to respond to Ghaffari's motion to compel, waived any objection regarding this procedural defect.

Defendants had neither objected nor otherwise responded to these discovery requests. [DE 32].

On November 19, 2013, I ordered Defendants to file a response to the motion by November 26, 2013. [DE 33]. That order was immediately served upon Abrams via CM/ECF. Abrams, as counsel for Defendants, did not file a response to Ghaffari's motion, or otherwise respond to my order. On December 4, 2013, I issued an order that set a hearing on Ghaffari's motion. [DE 37]. That order stated: "[a]t the hearing, Defendants shall show cause why they should not be sanctioned for failing to comply with my Order requiring a response to Plaintiff's motion [DE 33], and shall otherwise address why they have not produced the discovery requested." *Id.*

### 3. December 18, 2013 Discovery Hearing

At the December 18, 2013 discovery hearing, Ghaffari appeared on his own behalf and Abrams represented both himself and the other Defendants. I first addressed Abrams' failure to comply with the Court's November 19, 2013 order that directed him to file a response to the motion. Abrams acknowledged that he had received the order, and that he had also received Ghaffari's motion and the discovery requests that were the subject of that motion. Abrams explained that he did not respond to the discovery requests, and "elect[ed]"[5] to not comply with my order because his client, the Condominium Association, was without funds and he did not want to take the time or have his client incur the legal fees to prepare

[5] *See* DE 81, p. 4.

a response to the order, and because, he insisted, Plaintiff's lawsuit and discovery requests had no merit. I advised Abrams: "You, as an officer of the court, are obligated as part of your professional responsibility to read the order and to comply with it. If you have a problem with what the court is ordering you can file something to say what your concerns are, what your objections are, what you want the court to consider, but to do nothing is truly a contempt." [*Id.* p. 5.] [6]

At the same hearing, Ghaffari informed the Court that Defendants also had not produced their initial disclosures as required by Rule 26(a)(1), which had been due some six months earlier.[7] Abrams responded: "I don't know right now if we did or not, but we may not have at this point." [*Id.* p. 31-2]. I granted Plaintiff's motion to compel and found that Defendants had waived all objections to the discovery requests. I ordered Defendants to respond to the requests in full by December 31, 2014 [*id.* p. 15], and I ordered Abrams to serve and file the Defendants' initial disclosures by the same date. [*Id.* p. 32].[8] My order

---

[6] At the conclusion of the discovery hearing I said: "Mr. Abrams, it is over with your not complying with court orders. That is not going to happen again. I will hold you in contempt. Do you understand." He replied: "Understood." [*Id.* p. 28].

[7] The Federal Rules of Civil Procedure require parties to serve their initial disclosures within 14 days after their Rule 26(f) conference, unless a different time is set by stipulation or court order – and there was no such agreement or order here. F.R.Civ.P. 26(a)(1)(C). The parties reported that they met on June 24, 2013 to prepare their Joint Scheduling Report. [DE 19, p. 1]. At the very latest, their Rule 26(f) conference took place at this time, which would have made their initial disclosures due by July 8, 2013.

[8] Regarding Defendant's past-due initial disclosures, I instructed Abrams as follows: "Mr. Abrams, you will, by the last day of this month, you will serve and file, because I want to see [] it, the initial disclosures that you were required to have done months ago under Rule 26(a)(1)(a), and to do a very thorough job with it." [*Id.* p. 32].

stated in pertinent part that:

> Defense counsel, David Abrams, (who is also a Defendant), advised that he did not respond to any of this because he believes the Plaintiff's lawsuit is without merit. *I advised Mr. Abrams that it is entirely improper to not respond to discovery and a court order*, and given his failure to respond, I found that Defendants had waived any objections to Plaintiff's interrogatories and subpoena and must fully respond to that discovery. I set a deadline for doing so of December 31, 2013.

[DE 41, p. 1-2] (emphasis supplied).

My order also extended the deadline for filing a joint pretrial stipulation to February 7, 2014. [*Id.* p. 5]. At the discovery hearing, I addressed the requirement, in the Pretrial and Trial Order [*see* DE 23], that the parties prepare a joint pretrial stipulation and I stressed the importance of the parties working together to prepare a joint stipulation. [DE 81, p. 18-19]. Notably, the Pretrial and Trial Order itself emphasized that the pretrial stipulation must be joint, and warns: "The Court will not accept unilateral pretrial stipulations, and will strike, *sua sponte*, any such submissions. . . ." [DE 23, p. 2].

Significantly, at the discovery hearing, I took the time to understand the reason for Abrams' failure to meet his discovery obligations and to respond to the Court's order, and to remind Abrams of his obligations. I imposed the lesser sanction against the Defendants of finding that they had waived objections to Ghaffari's discovery. Unfortunately, this lesser sanction did not deter Abrams from continuing to disregard court orders.

**4. Defendants' Late Initial Disclosures; Second Show Cause Order**

On December 30, 2013, Abrams filed a notice of compliance with Plaintiff's

discovery requests. [DE 42]. On January 14, 2014, Ghaffari advised the Court that he had

not received Defendants' initial disclosures. [DE 43]. Accordingly, on January 16, 2014,

I entered an order directing Defendants to immediately serve their initial disclosures on

Plaintiff. [DE 44]. I further ordered Defendants, no later than January 21, 2014, to file a

written statement advising the Court of the date when they served their initial disclosures on

Plaintiff and, if that was after December 31, 2013, explaining why sanctions should not be

imposed on Defendants or their counsel for failure to comply with the Court's prior order.

This order was immediately served on Abrams through CM/ECF.

On January 17, 2014, seventeen days after the December 31, 2013 deadline set forth

in my order, and more than six months after the deadline set forth in Rule 26(a)(1)(C),

Defendants filed their initial disclosures. [DE 45]. Abrams, however, did not comply with

the January 16th Order that directed him to advise the Court when Defendants first served

those disclosures, nor did he address whether sanctions should be imposed on him, or all

Defendants, for Defendants' untimely production. That is, again, Abrams ignored the

Court's order. Consequently, on January 22, 2014, I issued a second order to show cause that

directed Abrams to show cause in writing, by January 27, 2014, why he should not be held

in contempt for failing to comply with my January 16, 2014 Order. [DE 48].

On January 27, 2014, Abrams filed a response to the second show cause order. [DE

51]. Surprisingly, he offered no explanation for his failure to respond the January 16, 2014

Order.  He did state that he filed Defendants' initial disclosures on January 17, 2014,[9] and justified his not having done so by the December 31st deadline established at the discovery hearing, because the Court established that deadline orally, and did not thereafter put that order in writing.  [*Id.*]

### 5.    Unilateral Pretrial Stipulations

As noted, the deadline for the parties to file the joint pretrial stipulation had been extended to February 7, 2014.  [DE 41, p. 5].  On February 13, 2014, Ghaffari filed a Unilateral Pretrial Stipulation and an accompanying Status Report [DE 52, 53], that included the following information: First, Ghaffari explained his filing of a unilateral stipulation, five days after the deadline;[10] specifically, he advised that the parties had agreed during their mediation that Abrams would file an agreed motion to continue the February 7, 2014, deadline until February 12th.[11]  When Abrams did not ask to have the deadline extended, Ghaffari went ahead with his late filing.  Ghaffari stated the stipulation was not joint because, following mediation, Ghaffari emailed Abrams his proposed joint pretrial stipulation but Abrams did not respond or otherwise communicate with Ghaffari regarding the stipulation.

---

[9] Plaintiff received service of the disclosures on that date through CM/ECF.  [*See* DE 71, p. 55].

[10] Local Rule 7.1(f) requires that when a pretrial stipulation is filed unilaterally, it must include a statement of reasons why the parties did not reach agreement on a joint stipulation.  S.D.Fla.L.R. 7.1(f).  Ghaffari satisfied this requirement with the information he provided in his Status Report.

[11] As a *pro se* party, Ghaffari does not have access to CM/ECF and must conventionally file documents with the Court.  According to Ghaffari, he and Abrams agreed that Abrams would file the motion for enlargement of time, since Abrams could do so electronically.  [DE 52].

[DE 52]. Second, Ghaffari alleged that Defendant Lazo and her counsel, Abrams, had yet to produce all of the financial documents that Ghaffari had sought in discovery and that the Court had ordered produced no later than December 31, 2013. [DE 53, p. 2-3].

On February 18, 2014, the eve of the scheduled pretrial conference and ten days past the Court's February 7, 2014, deadline, Abrams filed the Defendants' Unilateral Pretrial Stipulation. [DE 54]. Abrams did not explain why he filed it late and unilaterally, he did not respond to the assertions Ghaffari made about this in his status report, and he did not respond to Ghaffari's assertion that Defendant Lazo had yet to produce all of the financial discovery the Court had ordered.

**6. February 19, 2014 Pretrial Conference**

At the February 19, 2014 pretrial conference Ghaffari appeared on his own behalf and Abrams appeared on behalf of himself and his co-defendants. [DE 71, p. 2]. The Court addressed a number of issues.

Regarding his unilateral and untimely pretrial stipulation,[12] Abrams acknowledged that he was aware of the parties' obligation to file the joint stipulation by February 7th and explained that he choose not to do so because he hoped the parties' ongoing settlement efforts would be successful, and that they might reach an agreement before the pretrial conference and thus avoid the need to file a joint pretrial stipulation.[13] For the same reason,

---

[12] *See generally* DE 71, p. 3-20.

[13] Evidently, this was also Abrams' reason for not conferring with Ghaffari about his proposed pretrial stipulation.

Abrams did not file a motion for an extension of that deadline; that is, he decided it was not worth his effort to prepare either document, as he hoped the case would settle. [DE 71, p. 8-9]. Abrams readily admitted that he had ignored yet another court order and had done so a number of times before. [*Id.* pp. 11-12].

Abrams disputed Ghaffari's statement, in his status report [*see* DE 52], that Abrams had agreed to file a joint motion asking for an extension of the deadline for filing the joint stipulation. [DE 71, p. 7-9]. After hearing from both Ghaffari and Abrams on this subject, I found Ghaffari credible. [*Id.* p. 17]. As for the content of his unilateral pretrial stipulation, I asked Abrams why he made no mention of exhibits and he announced, for the first time, that he had none to introduce. [*Id.* p. 12-13]. I noted, from my reading of his unilateral document, that it was evident that "extremely little effort went into" Abrams' preparation of it. [*Id.* p. 18].

I also addressed Ghaffari's claim that the Defendants had not yet satisfied the Court's December 19, 2013 Order [DE 41], compelling them to produce, by December 31, 2013, the financial records of the Collins Tower Association for the year 2012. [*See generally* DE 71, p. 40-53]. I learned that the Defendants had produced only bank statements and invoices for elevator loan fees [*id.* p. 44-6]; they had not produced any accounting records or ledgers or any kind of documents that tracked the Association's credits and debits. Abrams acknowledged that such an accounting was part of the Association's financial records, and that it had not been produced. [DE 71, p. 49]. To justify his failure to produce these

documents as ordered, Abrams first suggested (without any explanation) that those documents could contain privileged information. [DE 71, p. 50]. When I reminded Abrams that he had waived all of his objections by failing to respond to the discovery requests and the motion to compel, and that the Court had ordered him to produce all financial records, Abrams tried to shift responsibility to the Plaintiff, stating that if Ghaffari wanted those records he should have asked Abrams for them. [*Id.* p. 47, 50]. I found that the accounting ledgers of the Association were among its financial records, and found that Abrams did not comply with my order that directed the Association to produce those records. [*Id.* p. 52-3].

In addition, I addressed with Abrams his failure to follow this Court's order that he serve and file Defendants' initial disclosures no later December 31, 2013, and his failure to fully respond to the January 16, 2013 order.[14] Abrams asserted that he felt that he had filed the disclosures timely and that he adequately responded to that order, and the subsequent order to show cause. In fact, he did neither.

### 7. Summary

In summary, I find that Abrams' failure to comply with the Court's orders and governing federal rules, included the following:

1. The July 29, 2013 Pretrial and Trial Order that required the parties to complete discovery by October 31, 2013. [DE 23]. Abrams' failure to adhere to the Federal and Local Rules that govern discovery, and his refusal to comply with court orders

[14] *See generally*, DE 71, p. 53-57.

that addressed his discovery obligations, prevented the parties from meeting this deadline.

2. The July 29, 2013 Pretrial and Trial Order that required the parties to file a joint pretrial stipulation by January 15, 2014 [DE 23], which deadline was later extended to February 7, 2014 [DE 41]. Abrams filed a unilateral pretrial stipulation, and filed it ten days late [DE 54], the day before the pretrial conference.

3. The November 19, 2013 order that Defendants respond to Plaintiff's motion to compel by November 26, 2013. [DE 33]. Abrams did not file a response to this Order.

4. Rule 26(a)(1)(C) requiring the parties to exchange initial disclosures within 14 days of their Rule 26(f) conference (held on June 24, 2014), and the December 18, 2013 *ore tenus* order that Defendants file and serve their initial disclosures no later than December 31, 2013. [DE 81, p. 32]. Abrams did not produce this information until January 17, 2014.

5. The December 19, 2013 Order Granting Plaintiff's motion to compel that ordered Defendants to respond in full to Plaintiff's discovery requests. [DE 41]. Abrams failed to produce financial records that were in the possession of his clients and that were indisputably subject to this order.

6. The January 16, 2014 order that Defendants explain in writing, by January 21, 2014, why they failed to timely serve initial disclosures and why they should not be

sanctioned for their failure to do so. [DE 44]. Abrams did not file any response to this Order.

### B. Abrams Was Substantially Unprepared to Participate in the Pretrial Conference and Did Not Participate in Good Faith.

I also find that Abrams appeared at the February 19, 2014 pretrial conference substantially unprepared and that he did not participate in good faith. First, he had not, at that very late stage in the proceedings, provided complete discovery. The Court extended certain pretrial deadlines and the date of the pretrial conference, among other reasons, so that Abrams could complete his production of discovery. He did not meet this obligation, and did not justify his failure to do so.

Second, Abrams made no effort, whatsoever, to prepare a joint pretrial stipulation. And, patently little effort went into his unilateral pretrial stipulation, which he filed late the day before the conference, with no explanation as required by Local Rule 7.1(f). The sanction imposed here is authorized, in part, under Federal Rule of Civil Procedure 16(f)(1), because Abrams was substantially unprepared to participate, and did not participate in good faith at that pretrial conference, and because he failed to obey the noted pretrial orders.[15]

### C. Abrams Had Notice and An Opportunity To Be Heard

This Court warned Abrams multiple times that sanctions could be imposed for his continued disregard of the Court's orders and the applicable federal rules. My first

[15] The sanctions authorized under Rule 16(f)(1) are set forth in Rule 37(b)(2)(A)(ii)-(vii); those sanctions include entry of a default judgment.

scheduling order, entered July 29, 2013, warned all parties that failure to comply with that Order or with the applicable rules could result in sanctions, including the sanction of default judgment. [DE 23]. At the December 2013 discovery hearing, I specifically warned Abrams that continued failure to comply with court orders would result in contempt, and Abrams acknowledged that he understood. [DE 81 p. 28]. In addition, I entered two separate orders requiring Abrams to show cause why he should not be sanctioned for his misconduct. Abrams is an attorney admitted to practice in this Court and in the State of Florida and, therefore, is familiar with the various sanctions provided in the Federal Rules of Civil Procedure. Abrams had ample opportunity to be heard and to explain himself both in writing and in person before entry of a default judgment.

**D.     Abrams Acted Willfully and in Bad Faith**

The record here discloses that Abrams has engaged in a pattern of abuse. He repeatedly and deliberately ignored court orders, even after being warned that sanctions would be imposed if such violations continued. Abrams did not argue that he misunderstood or was unable to comply with those orders. Instead, Abrams frankly acknowledged that he chose to ignore this Court's orders because, in his estimation, it was not worth his time or effort to comply.

Abrams attempted to justify his violations by asserting that he believed Ghaffari's claims had no merit or the case would settle before the stated deadline. That is, Abrams sought to substitute his judgment for that of the Court and deliberately chose to ignore court

orders and the rules of discovery. Abrams also sought to shift blame onto the Court or Ghaffari for his failings.[16] On this record, I find that Abrams' repeated violations of Court orders and applicable rules was willful and in bad faith.

**E. Abrams' Failure to Comply With Court Orders Has Prejudiced Plaintiff and Substantially Interfered With the Progress of the Case**

The sanction for Abrams' conduct must take into account the substantial prejudice it caused Ghaffari. Abrams' refusal to cooperate in the discovery process prejudiced Ghaffari and obstructed the progress of the case. The initial discovery deadline was October 31, 2013, but Defendants had not produced any initial disclosures or responded to any of Ghaffari's discovery requests by that deadline. I extended the Pretrial and Trial Deadlines to give Abrams and the other Defendants an opportunity to meet their discovery obligations. At the pretrial conference, on the eve of trial, the Court learned that Abrams had not produced the complete financial records, as I had ordered two months prior.

Abrams' behavior substantially interfered with Ghaffari's ability to prepare for trial. Ghaffari had to prepare a unilateral pretrial stipulation without the cooperation of Abrams and without the benefit of having complete discovery. Ghaffari also had to mediate without the benefit of discovery to which he was entitled.

---

[16] Abrams tried to blame the Court for his failure to comply with my order requiring production of Defendants' initial disclosures by December 31, 2013, stating that I only gave him this deadline in person at the discovery hearing, but had not followed it with a written order to the same effect. Likewise, Abrams suggested that Ghaffari was somehow responsible for Abrams' failure to produce complete financial records as required in my December 18, 2013 order.

### F. Lesser Sanctions Cannot Ensure Abrams' Compliance With Court Orders

At this juncture, there is no lesser sanction that will ensure Abrams's compliance with Court orders. The Court accommodated Abrams by extending deadlines, it warned him verbally and in writing and offered him multiple opportunities to explain himself, all to no avail.

When Abrams first ignored a court order, I took the time to explain to him his obligation (one he presumably already understood) to read and comply with Court orders and the Federal and Local Rules, and explicitly warned Abrams that his failure to do so was contemptuous and would lead to sanctions. At the discovery hearing, I found that his failure to comply with the November 19, 2013 order and associated rules amounted to a waiver of his and his clients' objections to discovery, and ordered Defendants to produce all responsive discovery. He did not do so. This lesser sanction did not coerce full compliance by Abrams.

I also issued two orders to show cause, directing Abrams to justify why his conduct should not be sanctioned. These did not deter Abrams. He continued to ignore my orders, including my order requiring that a joint pretrial stipulation be filed by February 7, 2014 and my orders that he serve Defendants' initial disclosures and produce all financial records in the possession of his clients by December 31, 2013. Afterward, at the pretrial conference, Abrams was plainly unprepared to proceed to trial, and made clear that he had continued to avoid his duty, as an officer of the court, to follow court orders and applicable rules. Given Abrams' conduct, I had no confidence that, at trial, he would follow rules and court orders.

With this history, I conclude that entry of a default judgment is the only appropriate sanction.

## IV.   The Default Judgment is Supported by a Well-Pleaded Complaint

A defendant who defaults admits the plaintiff's well-pleaded factual allegations and he may not thereafter challenge the plaintiff's proof. *See Maus v. Ennis*, 513 F. App'x 872, 880 (11th Cir. 2013) (unpublished)(citing *Eagle Hosp. Physicians, LLC v. SRG Consulting Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)). Before it enters a default judgment on liability, the Court must identify the claims supported by those well-pleaded allegations. *Maus*, 513 F. App'x at 880. I turn to identify those well-pleaded claims against Defendant Abrams.

### A.   The Legal Standard

When evaluating a complaint for legal sufficiency, the Court takes the factual allegations as true and construes them in the light most favorable to the plaintiff. *Edwards v. Prime*, 602 F.3d 1276, 1291 (11th Cir. 2010).   Ghaffari is not an attorney and is representing himself, and the Court must liberally construe his Complaint and hold it to a less stringent standard than it would the same document drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, purely conclusory allegations in the Complaint will not suffice; there must be factual allegations that make the right to relief more than speculative. *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555-56 (2007). The plaintiff must provide "the grounds of his entitlement to relief," which requires more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555. In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**B.     The Facts Alleged in the Complaint**

The Complaint alleges that Ghaffari owns a condominium unit at the condominium located at 720 Collins Avenue, Miami Beach, Florida ("Collins Tower"). [DE 1, ¶ 13].  He became the owner upon the death of his grandmother, Yolanda Hilliard, and uses the unit as a vacation home.  [*Id.*, ¶¶ 12-13].  The Defendants are the Collins Tower Condominium Association (the "Association"), which operates the condominium [*id.*, ¶ 2 & Ex. A], four individual members of the Association's Board of Directors (Alberto Armada, Ronald Rutnik, Osmani Gonzalez, and Georgina Lazo) [*Id.*, ¶¶5-8], and Abrams, a lawyer who represented the Association at all pertinent times and who collected assessments on its behalf.  [*Id.*, ¶¶ 9-11].

The Complaint further alleges that the Association is authorized to collect assessments from the unit owners to be used to maintain the condominium.  [*Id.*, Ex. A].  The Association does this by imposing a bi-annual maintenance fee on each unit, including Ghaffari's unit, which is due in January and July of each year.  [*Id.*, ¶ 16].  The Association's Board of Directors, including Defendants Armada, Rutnik, Gonzalez, and Lazo are authorized to collect assessments on behalf of the Association. [*Id.*, ¶¶ 5-8; Ex. B].  The Complaint alleged that Abrams acted as an attorney and debt collector on behalf of the Association.  [*Id.*, ¶¶ 9-11; Ex. F].

Early in 2013, the exact dates not made clear in the Complaint, Ghaffari and other unit owners in Collins Tower initiated a recall election of the Association's president, Armada, for alleged wrongdoing and financial irregularities in the management of the Association. [*Id.*, ¶ 19]. Upon learning of the recall effort, Armada, with the other board members, tried to discredit and defame Ghaffari, my mailing inflammatory letters about him to other unit owners. [*Id.*, ¶¶ 20-21].

On February 26, 2013, the Association sent two letters. The first directed their attorney, Abrams, to initiate foreclosure efforts against Ghaffari. Specifically, three members of the Board engaged Abrams to proceed with foreclosure of "Unit 401–Anthony Ghaffari." [*Id.*, ¶ 22; Ex. D]. The letter falsely stated that Ghaffari had failed to pay "any and all maintenance and elevator loan fees since mid-year 2012," and that Ghaffari made no effort to make payment arrangements or to respond to various notices to pay. *Id.* In fact, on February 15, 2013, Ghaffari placed two checks in the Association's mailbox, for the January 2013 condominium fee and elevator assessment. [*Id.* ¶ 18; Ex. C]. At the time of the February 26, 2013 letter, Ghaffari had paid all fees due for his unit. [*Id.* ¶ 17].

The second letter was sent to all of the unit owners at Collins Tower, and attached a copy of the letter to Abrams. [*Id.* ¶ 26]. This letter claimed that Ghaffari was a unit owner, that he had failed to pay the Association assessments, and that the Association would seek to foreclose on Ghaffari's unit. That letter stated in part: "Furthermore, Mr. Ghaffari has not paid their [sic] maintenance fees or elevator assessments for July 2012 and January 2013.

Several attempts to collect this debt have gone unanswered." [*Id.*, Ex. E]. Abrams was copied on this letter. *Id.*

On March 6, 2013, Abrams wrote Ghaffari this letter:

Dear Mr. Ghaffari:

It has recently been brought to the attention of the Board of the Condominium Association that the owner of record for Unit 401 is the "Estate of Yolanda Hillard." A copy of a 2/27/13 Property Tax Information Report is enclosed. The Report further shows that there appears to be back taxes owed for which a Tax Certificate was issued with a balance due of $ 4,276.45.

If you wish to avail yourself of the rights and privileges of Unit Owners ownership please provide sufficient evidence that you are in fact the legal owner and not the above-referenced estate. Such evidence would include, but not necessarily [*sic*] limited to, a recorded copy of a Personal Representative's Deed and/or recorded quit claim deed showing you as the Grantee.

Given the above current discrepancy as to legal ownership, enclosed herewith are the two (2) checks that you recently tendered with a date of 1/1/13. The Board requires that the full amount be paid and reserves the right to pursue all available legal remedies.

You are strongly urged to contact the undersigned to be provided with the full amount presently due and for which a Claim of Lien will be filed with the Clerk of Court.

Very truly yours,
David S. Abrams, Esq.

[*Id.*, Ex. F]. Along with the letter, Abrams returned to Ghaffari the two checks that Ghaffari had delivered to the Association on February 15, 2013, in payment of the Association's fees. [*Id.*, ¶ 29]. The Complaint asserts that these actions violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"). It further alleges that the Defendants' conduct caused Ghaffari to suffer both economic and non-economic losses. [*Id.*, ¶ 33]. In particular,

other unit owners in the building contacted Ghaffari to ask why he had not paid his association fees, Ghaffari incurred expenses to avoid further improper collection attempts and to remove the lien placed on his unit. *Id.* He has also incurred expenses making unscheduled trips from Pennsylvania to Florida for the sole purpose of resolving this matter, and other costs. *Id.* Ghaffari claimed $2,000 in actual damages, $4,500 in compensatory damages, statutory damages and equitable relief. [*Id.* p. 16].[17]

**C. Discussion**

The FDCPA was designed to protect consumers from debt collectors' use of abusive, deceptive, and unfair debt collection practices. 15 U.S.C. § 1692. To that end, the Act sets forth standards of conduct for debt collectors, and creates a private right of action against debt collectors who fail to comply with its provisions. 15 U.S.C. § 1692k. Among other prohibitions, the FDCPA forbids debt collectors from: (1) using unfair or unconscionable means to collect or attempt to collect a debt, 15 U.S.C. § 1692f; (2) making false, deceptive, or misleading representations in connection with the collection of a debt, 15 U.S.C. § 1692e; and (3) harassing, oppressing, or abusing any person in connection with the collection of a debt, 15 U.S.C. § 1692d. The FDCPA also imposes affirmative obligations upon debt collectors, to include the duty to provide certain written notices to consumers from whom they are attempting to collect a debt. 15 U.S.C. § 1692g. To state a claim under the FDCPA, a plaintiff must allege that the defendant is a debt collector who has engaged in conduct

[17] The claim for equitable relief has since become moot.

prohibited by the Act that is related to debt collections. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1121, 1216 (11th Cir. 2012).

**1. Abrams was a Debt Collector**

The FDCPA defines "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis supplied); *see also Reese*, 678 F.3d at 1218. The Complaint unambiguously alleges that Abrams was the debt collector for the Association [DE 1, ¶¶ 9-10], which Abrams does not dispute. (*See* Defendants' Unilateral Pretrial Stipulation, stating it is uncontested that "Defendant attorney ABRAMS is a debt collector for COLLINS TOWERS CONDOMINIUM ASSOCIATION pursuant to the FDCPA." [DE 54, p. 3]).

**2. Abrams Engaged in Prohibited Conduct Related to Debt Collection**

The Complaint contains six counts. Count One, in a conclusory fashion, asserts that the Defendants, including Abrams, "engaged in numerous acts or omissions prohibited by the FDCPA." [DE 1, p. 9]. It does not amount to a well-pleaded claim against Abrams.

Counts Two and Four-A[18] assert claims against the other individual Defendants, arising from the letters they allegedly sent to all unit owners, falsely stating that Ghaffari had not paid fees due on his unit, and that he owed money to the Association. The allegations

[18] The Complaint contains two counts entitled "Count Four." This Order refers to the first Count Four as "Count Four-A" and to the second Count Four as "Count Four-B."

that support those claims do not permit the inference that Abrams joined in this conduct and these counts therefore do not state a claim against Abrams. The remaining three counts do concern Abrams, and I find that two of them are sufficiently well-plead to allow for entry of a default judgment against Abrams on those counts.

**a. Count Three**

Count Three alleges that Abrams (and the other Defendants) violated § 1692e. This section prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e contains several enumerated examples of prohibited false or deceptive practices, that are not meant to limit the general application of the section. *Id.* When determining whether a debt collector's communication violated § 1692e, the Court must consider it from the perspective of the least-sophisticated consumer. *LeBlanc v. Unifund CCR Partners, ZB,* 601 F.3d 1185, 1193-94 (11th Cir. 2010). This standard protects the naive as well as the sophisticated, and it is an objective test that will not impose liability for a consumer's "bizarre or idiosyncratic interpretations of collections notices." *Id.* at 1194 (quoting *United States v. Nat'l Financial Serv., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

The allegations in Count III focus on Abrams' March 6, 2013 letter to Ghaffari. I find that the Complaint sufficiently alleges that Abrams' conduct in sending that letter violated § 1692(e). To begin, the letter includes a copy of the unit's Property Tax Information Report, and states that the report "shows that there appears to be back taxes owed for which a Tax

Certificate was issued with a balance due of $ 4,276.45." [DE 1, p. 30]. This statement could lead the least-sophisticated consumer to believe that Abrams was attempting to collect the back taxes owed, in the amount of $ 4,276.45, as the letter later states, "You are strongly urged to contact the undersigned to be provided with the full amount presently due . . . ." *Id.* The letter does not unambiguously state what debt Abrams is trying to collect, nor does it identify the full amount of the debt.

The fact that Abrams cites the $4,276.45 as an amount owed then subsequently demands that "the full amount be paid" could give an unsophisticated consumer the understanding that Abrams was attempting to collect back taxes. This is false and misleading because Abrams did not have the authority to collect back taxes, as he represented the Association, and thus had only the authority to collect assessments due the Association. The Complaint therefore sufficiently alleges that the letter violated § 1692e(2)(A) because it falsely represents the "character, amount, or legal status of any debt" and because it was contrary to § 1692e(5) as it threatened to take action "that can not legally be taken."

The letter also states that Ghaffari is not the "owner of record for Unit 401"; rather his grandmother's estate was the legal owner. [DE 1, Ex. 7]. Abrams then uses this as justification for the Association's refusal to accept the January, 2013 checks Ghaffari delivered as payment for the fees due on Unit 401. Having returned the checks, Abrams then demanded that "the full amount be paid" (again, without stating that amount) and threatened to take legal action if it was not. The letter closed by stating that "a Claim of Lien

will be filed with the Clerk of Court" for the full amount presently due. [*Id.*].

Abrams' statements are both contradictory and misleading. If Ghaffari was not the owner of Unit 401, he had no obligation to pay any fees and, therefore, could not be responsible for the debt. Whether or not Ghaffari was the unit owner, he paid the fees via his January, 2013 checks which Abrams unjustifiably returned and, therefore, no valid debt existed.[19] Abrams' demand for payment falsely represented the legal status of the debt because, under either scenario, Ghaffari owed no fees. Further, by threatening to place a lien on the property and take legal action to collect fees that either were not Ghaffari's responsibility or which the Association had refused to accept, Abrams threatened to take action he could not legally take. These are expressly misleading practices under § 1692(e)(2)(A) and 1692e(5).

Count Three states a claim against Abrams for a violation of § 1692e.

**b. Count Four-B**

Count Four-B alleges a violation § 1692g, which requires debt collectors to provide the debtor with a "validation of debt" notice. The purpose of the notice is "to guarantee that consumers . . . receive adequate notice of their legal rights." *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991). The section requires that in a debt collector's initial communication, or within five days thereof, the debt collector must give

[19] The Complaint also alleges that even if a debt had existed for the June 2012 assessment, when Ghaffari tendered payment for the January 2013 fees, he would have been one payment in arrears and not in default according to the Association's own by-laws. [*Id.* ¶ 34].

the consumer written notice containing:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the 30-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692g(a)

Here, the Complaint alleges that Abrams' March 6, 2013 letter was the first and only letter Ghaffari received from him. The letter is attached to the Complaint and does not contain the notice required by § 1692g. And, as already noted, the letter itself did not clearly state the amount of the debt and it did not offer Ghaffari an opportunity to contest the validity of the debt. These allegations support the claim that Abrams did not provide Ghaffari with a "validation of debt" notice. For these reasons, I find that Count Four-B states a claim against Abrams for violation of § 1692g.

**c. Count Five**

Count Five alleges that Abrams violated § 1692h by failing to apply Ghaffari's

payments to the debt due the Association.  That section provides that "[i]f any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions." 15 U.S.C. § 1692h.  Although Abrams did refuse to apply Ghaffari's payments according to Ghaffari's instructions, the Complaint does not allege that Ghaffari owed multiple debts.  I therefore find that the Complaint does not state a claim against Abrams under this section.

In sum, the Complaint states a claim against Abrams under § 1692e and  § 1692g and, therefore, the default judgment on liability is supported by a well-pleaded Complaint.

## V.    Calculation of Damages

Before entering a final default judgment, the Court must determine the amount of damages.  Fed. R. Civ. Pro. 55(b)(2).  The Eleventh Circuit observed that "an evidentiary hearing is not a *per se* requirement," but basic notions of due process require a hearing in most cases. *See Securities and Exchange Commission v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005) ("such hearings are required in all but limited circumstances, as when the district court already has a wealth of evidence from the party requesting the hearing") (internal citations omitted); Fed. R. Civ. Pro. 55(b)(2) ("the court *may* conduct hearings") (emphasis supplied).  No hearing is required where all essential evidence is already of record. *Smyth*, 420 F.3d at 1232, n.13; *Adolph Coors Co. v. Movement Against Racism & the Klan*,

777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'") (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979)).

Ghaffari has filed a detailed memorandum in support of damages [DE 84, 85], which is supported by numerous exhibits and declarations [DE 84-93]. Abrams did not file a response. The parties filed a joint pretrial stipulation solely on the issue of damages, in which they agree that there are no issues of fact that remain to be litigated. [DE 77, p. 3]. In the stipulation, Abrams did not list any witnesses or exhibits, or otherwise indicate that he had any evidence for the Court to consider on the issue of damages. He did argue that Ghaffari cannot recover damages from Abrams because Ghaffari elected to settle with the co-Defendants, but Abrams provided no legal or factual support for this assertion. [*Id.*, p. 4].

It appears that this case presents one of those limited circumstances in which a hearing is unnecessary. Before I finally resolve that question, Abrams shall file a response to Ghaffari's memorandum of law [DE 84, 85] explaining, with citations to supporting evidence and legal authority, what damages he believes Ghaffari is entitled to recover. Ghaffari may file a reply to Abrams' response.

## VI.    Conclusion

In accordance with the foregoing, it is **ORDERED**:

1. Defendant David Abrams' Answer [DE 26], is STRICKEN and a default judgment is entered against him finding him liable for the well-pleaded claims in the Complaint that allege violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692g.

2. **On or before August 29, 2014,** Abrams must respond to Plaintiff's memoranda on damages. **On or before September 12, 2014**, Plaintiff may file a reply.

3. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in chambers at Miami, Florida, this 8th day of August, 2014.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of record
Anthony Ghaffari
1317 Sandpiper Drive
State College, PA 16801-7714